## Moss v. Commonwealth.

(Decided Oct. 5, 1937.)

284

WILLIAM HILL MACKEY, JOHN S. DEERING and L. SAUNDERS for appellant.

HUBERT MEREDITH, Attorney General, and GUY H. HERDMAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Ray Moss, was tried and convicted under an indictment charging him with "the crime of feloniously breaking storehouse where gasoline was stored with intent to steal therefrom," and his punishment was fixed at confinement in the penitentiary for a term of three years. The indictment was returned under section 1164 of the Statutes which reads:

"If any person shall feloniously, in the night or day, break any warehouse, storehouse, office, shop, or room, in a steam, wharf, or other boat, whether such place be or be not a depository for goods, wares or merchandise, and whether the goods, wares and merchandise be or be not exposed for sale in such place, with intent to steal, or shall feloniously take therefrom or destroy any goods, wares, or merchandise, or other thing of value, whether the owner or other person be or be not in such house, office, room, or shop, he shall be confined in the penitentiary not less than one nor more than five years."

At the time the alleged offense was committed, A. J. Warner operated a garage and filling station on a highway 3 miles south of Nicholasville. The garage is a building 30 feet wide by 40 feet in depth, with a shed in front extending to the edge of the highway. Under the shed near the edge of the highway are located three gasoline pumps 8 or 10 feet in height, each connected at its base to a tank buried in the ground under the shed of the building. On two successive nights in April,

1937, these pumps were broken into and gasoline was taken from the tanks. On the next night Mr. Warner went to the garage armed with a gun, and remained in the building until after midnight. Several automobiles passed along the road, but none of them stopped until shortly after midnight, when an automobile with the lights off left the road, passed under the shed of the filling station, and stopped at the gasoline pumps. Three men were in the automobile. Two of them got out, and Warner heard them tampering with the pumps. When he realized that one of the pumps had been opened, he stepped out of the door of the garage and began shooting. Ashford Cooley, who was standing back of the automobile with the hose which was attached to the pump in his hand, was wounded. Appellant was standing at the pump holding the pump handle. A skeleton key was found on the ground near the pump. Appellant asked a neighbor to telephone to the sheriff who arrived in a few minutes and arrested the three men. Appellant lived only a few miles from the gasoline station, and at his trial testified that he had frequently bought gasoline from Mr. Warner and that on the night in question when he passed the station he noticed that the gasoline pump was unlocked. He called, but no one answered, and, his gasoline supply being low, he decided to fill his gasoline tank and pay for the gasoline on the following morning; that he did not unlock or break the pump, and had no intention of stealing gasoline. He admitted that the lights on the car were out when he drove under the shed, but claimed that they were not working. The sheriff testified that he turned on the lights of the automobile just after making the arrest and that they were in good working order. Appellant denied that he used the skeleton key found on the ground under the shed, but admitted that he had seen it before. When he was asked if he had seen the key, he said: ''Yes sir, Uncle Bill Leavell made that key in front of my house, sitting on the running board.'' Appellant insists that he was a victim of circumstances and should not have been convicted upon the facts adduced by the Commonwealth, but the evidence was amply sufficient to sustain the verdict.

The chief contention made by appellant for a reversal of the judgment, and the only one possessing merit, is the claim that the act of appellant does not come under section 1164 of the Statutes. It is appel-

lant's contention that neither the pump on which the lock was broken, or opened, nor the tank to which it was attached and of which it was a part, constituted a storehouse within the meaning of section 1164, and he relies upon Mason v. Commonwealth, 101 Ky. 397, 41 S. W. 305, 19 Ky. Law Rep. 622, Wilson v. Commonwealth, 174 Ky. 602, 192 S. W. 631, and People v. Lamphere, 219 App. Div. 422, 219 N. Y. S. 390. In Mason v. Commonwealth, the defendant, who lived in the house, entered a small room which had been partitioned off in the cellar under the dwelling house and in which were kept six jugs of wine for family consumption. He was indicted under section 1164 for breaking into a storehouse, but it was held that, if any offense was made out, it came within the purview of section 1162, providing punishment for breaking a dwelling house or any part thereof, or any outhouse belonging to or used with any dwelling house, and feloniously taking away anything of value. In holding that the wine room in the cellar was not a storehouse within the meaning of section 1164, the court said:

> "The cellar was under the dwelling house. Part of it was used by the women of the house as a weaving room, but six jugs of wine were kept in the little room which formed a part of the cellar, and the wine was not kept for sale, but as a part of the provisions of the family. In our judgment, the room was no more a storehouse, within the meaning of the statute, than any pantry or closet in the upper part of the building in which provisions or clothing were stored."

Wilson v. Commonwealth merely held that a locker was not a storehouse and was no more within the meaning of the statute than a cupboard, a trunk, or a bureau drawer. In People v. Lamphere the accused was indicted under a New York statute which provides that a person who breaks and enters a building, or any part of a building, with intent to commit a crime therein, is guilty of burglary in the third degree. The acts charged were breaking into and entering a building, namely, a gasoline pump, with felonious intent to steal gasoline. The pump was separated by a driveway from a building in which lived the people who had charge of the service station and was in nowise attached to or a part of that building. A companion statute (Penal. Law N. Y. [Consol. Laws, c. 40] sec. 400, subd. 4) defined the

term "building" as including "a railway car, vessel, booth, tent, shop, inclosed ginseng garden, or other erection or inclosure." The court applying the ejusdem generis rule, held that the gasoline pump was not a building within the meaning of the statute under which the indictment was returned, and directed the dismissal of the indictment. None of the cases cited by appellant is an authority in this case.

The word "storehouse" is a wider and more comprehensive term than building or warehouse. A case directly in point is Steele v. State, 80 Neb. 9, 113 N. W. 798, 127 Am. St. Rep. 741. The defendant was indicted under a statute providing a penalty for breaking and entering a storehouse and stealing therefrom property of value. The defendant stole four hides which were stored in a structure or repository originally constructed for a beer vat. The structure was built of heavy oak timbers, was 6 or 8 feet deep by 6 feet in diameter, was partly sunk in the ground, and had a hinged cover which was secured in place by a lock. This receptacle was being used for storing hides when the offense for which the defendant was indicted was committed. He broke the lock and stole four of the hides. In denying the contention that this repository was not a storehouse within the meaning of the statute, the court said:

"The term 'storehouse,' as used in our statute, necessarily means some kind of a structural barrier to the ingress of the public. A repository or receptacle where goods are stored is a storehouse. Such a structure need not be a house or a building, strictly speaking. It is enough if it is shown to be a structure, properly barred from entrance by the public, where goods are stored and kept."

The Century Dictionary defines storehouse as "a house in which things are stored; a building for the storing of grain, food stuffs, or goods of any kind; a magazine; a repository; a warehouse; a store." If the gasoline tank in question had been constructed above the surface of the ground, it would have been a storehouse. Certainly as much so as a grainery, stable, or tobacco barn, which have been held to be storehouses within the meaning of the statute. Ray v. Commonwealth, 12 Bush 397; White v. Commonwealth, 87 Ky. 454, 9 S. W. 303; Wilson v. Commonwealth, 174 Ky. 602, 192 S. W. 631. The mere fact that the tank was

sunk in the ground did not alter its character as a storehouse. A magazine in which powder is stored, whether it is above or below the surface of the ground, is certainly a storehouse within the meaning of the statute. We can see no distinction where the article stored is gasoline. When the defendant unlocked the pump, he was able to extract gasoline from the tank, a structure of which the pump was a part, and the offense denounced by section 1164 of the Statutes was committed.

The judgment is affirmed.